Dore, J.
(dissenting). The majority opinion points out that upon examination by the court of the exhibits in evidence, the completed books show some color variations from the author’s original drawings and the final color sheets, and some variations in the books themselves. The number of instances in which this occurs is fourteen out of a total of 160 birds depicted in the completed books.
In view of the nature of the contract and in the light of the weight of the credible evidence, that, in our opinion, is not the test by which the issues on this appeal should be determined. The test is not what we as judges (nonexperts and mere laymen in the craft of lithographic color reproduction by the so-called “ hand separation process ”), may find by comparing or contrasting the exhibits before us. That indeed would be the test if by its contract the printer, plaintiff herein, had given defendant, the publisher, a warranty of completely accurate color reproduction. This record establishes that no such warranty was given, and fully supports the trial court’s finding that at the very outset defendant, the publisher, told plaintiff, the printer, that the book would have to be made as inexpensively as possible, since the publisher wanted to keep the price of production down so that the book could be sold at a low price. The cost to the publisher of the bound book, with 160 birds reproduced in about four colors in addition to the printed text, was 49 cents for each book; the publisher proposed to resell for $2.00 each. It was also clearly established, as the court found, that the printer had explained to the publisher that the so-called “ hand separation process ” would not give perfect reproduction of the colors. Defendant’s production manager who conducted negotiations on the part of the publisher leading to the contract, in order to secure the cheapest and least expensive method, ordered that the work be done by what is called in the trade “ the hand separation ” process for reproducing different colors. Both the production manager and Dr. Hausman, the author, were informed of the limitations of that process and understood that variations in color would result from its use. The publisher’s *34 production manager admitted on cross-examination that it was part of his job and his business to be familiar with the various processes employed in the reproduction of colored pictures and that he was familiar with them. Dr. Hausman, the author, also defendant’s witness, admitted on direct examination that the printer said “ he will not reproduce these colors exactly, and none of the Duenewalds [plaintiff’s representatives] ever said they could reproduce the colors exactly ” (emphasis ours). He repeated that on cross-examination. In such testimony he did not distinguish between “ colors ” and “ shades ” or “ hues ” of colors.
On this record, we think the ultimate test is whether in the light of all the credible evidence and of the cheap process ordered by the publisher, the result as a color lithographing job by such process is as good as could reasonably be expected. That issue should be determined by the accepted testimony of experts in the craft familiar by experience with lithographic reproduction in colors by the so-called “ hand .separation process ”. With that process this court is not and cannot be familiar. Nowhere in the record is the process so definitely explained and set forth as to be equally understandable by laymen as well as by experts in the craft.
Plaintiff’s expert Walsh, for forty years in the business, testified there were four or five different methods of reproducing colors, that he was thoroughly familiar with the “ hand separation process ” which necessarily produced variations. He testified on the basis of his wide experience that plaintiff’s results were very acceptable in the light of the method used; that variations in color when such method is used are practically unavoidable. The witness was not a so-called professional expert, engaged for the most part in giving testimony; on the contrary, although forty years in the trade, this was his first appearance in court. Defendant’s expert, Teller, personally in the lithographic business for only fifteen years, testified that the printer’s job was a “ poor ” one even from a hand separation point of view, but he admitted that the method used was ‘ ‘ the cheapest ’ ’ process for the reproduction of colored pictures in print. He also admitted that he did a great deal of work for defendant, publisher herein, viz., about $1,000 a month or $12,000 a year.
In the light of the quality of the testimony and the limitations of the contract, we think the trial court properly accepted the testimony of plaintiff’s expert and that such testimony is corroborated by other credible evidence in the record.
*35 Five or six thousand copies of the bound and completed books were accepted by defendant and sent to its customers, the booksellers. Only the author, Dr. Hausman, complained, not the booksellers. It was at the author’s request that defendant ordered the books returned. Defendant thereupon refused to make payment to the printer for the enormous amount of work the printer had performed at defendant’s request. But the printer had no contract with Dr. Hausman, the author. The publisher did have a written contract with him. The printer’s only contract was with the publisher and to that the author was not a party. The issues herein are to be determined solely on that latter contract. Concededly, defendant was prepared to accept a certain margin of variation in the colors reproduced and does not complain because all the reproductions were not precisely exact. The issue before the trial court was whether the printer so breached its contract with the publisher as to deny the printer any recovery at all for the agreed price of the printer’s work, labor and services performed in execution of the contract. The trial court who saw and heard the witnesses decided that issue in favor of plaintiff, the printer. Our reading of the record leads us to the conclusion that on all essential controverted issues the weight of the credible evidence clearly supports the findings of the trial judge that the printer did not breach his contract with the publisher by failing to produce a book acceptable in the trade as good in the reproduction of colors as could reasonably be expected in the light of the cheap and inexpensive process defendant, the publisher, insisted that the printer use.
The rule of law, applicable on appeal, is that findings of fact made by the trial court should not be disturbed when they are supported by sufficient competent and credible evidence; and if a finding of fact is made on conflicting evidence, the appellate court will reverse when the finding is contrary to the weight of the credible evidence. Tested by this rule the findings of the learned trial court should not be disturbed.
Accordingly, we dissent and vote to affirm in all respects the judgment in plaintiff’s favor.
Glennon, J. P., and Callahan, J., concur with Yah Yoorhis, J.; Dore, J., dissents and votes to affirm in all respects the judgment in plaintiff’s favor, in opinion in which Cohn, J., concurs.
Judgment reversed, with costs and disbursements to the appellant, the complaint dismissed upon the merits and judgment granted to defendant on its counterclaim for $615.25. Settle order on notice.